IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHANNING R. KNAPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 17-0411-MU |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Channing R. Knapp brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a Period of Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 21. Upon consideration of the administrative record, Knapp's brief, the Commissioner's brief, and the arguments made at the hearing on May 9, 2018 before the undersigned Magistrate Judge, it is

determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I.  PROCEDURAL HISTORY

Knapp applied for a Period of Disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, on January 18, 2015, alleging disability beginning on August 29, 2014. (Tr. 150-51). His application was denied at the initial level of administrative review on March 11, 2015. (Tr. 70-84). On April 2, 2015, Knapp requested a hearing by an Administrative Law Judge (ALJ). (Tr. 94-95). After a hearing was held on July 14, 2016, the ALJ issued an unfavorable decision finding that Knapp was not under a disability from the date the application was filed through the date of the decision, September 20, 2016. (Tr. 52-69, 11-24). Knapp appealed the ALJ's decision to the Appeals Council, and, on August 21, 2017, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

After exhausting his administrative remedies, Knapp sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on January 9, 2018. (Docs. 11, 12). Both parties filed briefs setting forth their respective

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 19. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

positions. (Docs. 14, 16). Oral argument was held on May 9, 2018. (Doc. 20). The case is now ripe for decision.

## II. CLAIMS ON APPEAL

Knapp alleges that the ALJ's decision to deny him benefits is in error for the following reasons:

1. The ALJ erred by relying upon a non-examining reviewing physician's opinion to support his residual functional capacity (RFC), and

2. The ALJ erred because her assessment of Knapp's RFC was not supported by substantial evidence.

(Doc. 14 at pp.1-2).

## III. BACKGROUND FACTS

Knapp was born on October 26, 1973, and was 41 years old at the time he filed his claim for benefits. (Tr. 55). Knapp alleged disability due to multiple disc problems in his back, back pain after lower back surgery, pain and/or numbness in his legs, knees, feet, ankles, and wrists, and irritable bowel syndrome. (Tr. 59-60, 167). The highest grade in school he completed was 10th grade, and he was not in special education. (Tr. 168). Prior to quitting work in 2014 due to his back pain, Knapp worked as a vinyl siding installer. (Tr. 57-59, 168). Knapp lives with his wife and teenage son. (Tr. 56). In a typical day, Knapp wakes up early in the morning, takes his medication, sits in his recliner until they take effect, and helps his disabled wife with housework and meals and his son with homework. (Tr. 62, 178). He states that he can only stand for about 15 minutes at a time and can only sit in his recliner. (Tr. 178). He has a driver's license and is able to drive. (Tr.

181). According to Knapp, he does quick trips to the grocery store and tries to sit outside every day, but does not go out much and is no longer able to camp, hunt, fish, or ride a 4 wheeler or motorcycle. (Tr. 62-63, 181-82). He claims that his medications have helped his pain, but affect his concentration, memory, and alertness. (Tr. 65-66, 183).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in her September 23, 2016 decision:

**3. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, and obesity (20 CFR 404.1520(c)).**

\* \* \*

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he needs to be able to alternate between sitting and standing at will, but will not need to leave the work station, and he is unable to work around heights.**

\* \* \*

The claimant alleges that he has bad knees and bad discs in his neck and experiences pain from shoulder to shoulder, lower back pain, lumbar radiculopathy, general joint pain and popping, and popping in his shoulders and ankles. He has problems sitting for long, can only stand and walk about 10 minutes at a time each, and does not sleep well. He can lift things, but pays for it later. He spends much of the day sitting in a recliner and changing positions to get comfortable. He has a history of a failed back surgery. He has been in pain management, and his medications have been changed over the years in an attempt to find ones that work. Medications help somewhat, but he experiences the side effect of fatigue. Due to pain and medication side effects, he is not able to concentrate long enough to watch a movie. He had difficulties during the FCE on March 22, 2016. He felt terrible and was bedridden for a day afterwards.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

4

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The medical evidence of record documents the claimant's severe physical impairments of degenerative disc disease, degenerative joint disease, and obesity since the alleged onset date. He has complained of lower back pain; lumbar radiculopathy, worse on the left side; neck pain; cervical radiculopathy, worse on the left side; bilateral knee pain; bilateral ankle pain and giving out; upper back pain; mid back pain; right shoulder pain; bilateral shoulder popping; bilateral arm pain; bilateral leg pain; widespread joint pain; popping in his joints; his pain being exacerbated by prolonged sitting, standing, walking, and lifting; and pain interfering with his ability to concentrate (Exhibits 5F, 7F, 11F, 13F, and 14F).

Findings of neck tenderness and tightness; mid back tenderness; lower back tenderness, muscle spasm, stiffness, positive facet loading sign, positive Patrick's sign, and decreased range of motion; positive straight leg raising results; somewhat reduced bilateral hip strength; bilateral knee tenderness, mild crepitus, and positive grinding test results; left ankle tenderness; antalgic gait; decreased light touch sensation in the left arm; right shoulder tenderness, positive Neer's and Hawkins' signs, and mildly decreased range of motion; and mildly decreased left shoulder range of motion have been noted intermittently on examination since the alleged onset date (Exhibits 5F, 7F, 9F, 11F, and 13F). However, normal neck examination results, normal lower back strength, normal bilateral lower extremity examination results, normal bilateral lower extremity motor function, bilateral normal knee range of motion and negative anterior and posterior drawer signs, bilateral ankle normal range of motion and negative anterior and posterior drawer signs, normal muscle bulk and tone, normal gait and station, ability to stand without difficulty, normal reflexes, intact sensation, mostly normal musculoskeletal examination results, and normal attention and concentration abilities have also been noted (Exhibits 5F, 7F, 9F, 11F, 12F, and l5F). He is 5' 7" tall, and his weight has been recorded at between 260 and 306 pounds since the alleged onset date, (Exhibits 3F, 9F, 12F, 14F, 15F, and 16F), which correlates to a body mass index between 40.7 and 47.9.

* * *

[In depth discussion of medical records]

The FCE on March 22, 2016 demonstrated that the claimant had the tolerance for lifting in the light physical demand level of 20 pounds from the knee to overhead level with frequent intermittent sitting, standing, and walking (Exhibit 17F). The remaining limitations addressed in the FCE are generally consistent with light work activity (SSRs 83-14 and 85-15). Some inconsistencies with the claimant's performance were noted during the FCE, and he displayed some fear avoidance and self-limiting behaviors with material handling.

On June 17, 2016, Dr. Hall noted that the claimant had reported complaints of intractable pain but summarized the FCE conclusions and cited the exam as an objective evaluation of the claimant's physical ability; he did not challenge the results in any respect other than to remark that the claimant's condition could be expected to worsen with time (Exhibit 18F).

\* \* \*

As for opinion evidence, although Physical Therapist Washicheck and Physical Therapist Assistant Brenes are not acceptable medical sources for medical opinion purposes, the undersigned has considered their FCE under SSR 06-03p and gives it great weight (Exhibit 17F). They administered the FCE, and the FCE conclusions are generally consistent with the record as a whole. Moreover, Dr. Hall cited the FCE conclusions as an objective evaluation of the claimant's physical ability; he did not question or challenge the conclusions in any respect other than to note that the claimant's condition could be expected to worsen with time (Exhibit 18F).

On March 10, 2015, James Sims, M.D., a State agency medical consultant, completed a physical residual functional capacity (PRFC) assessment indicating that the claimant could perform a range of light work (Exhibit 1A). The undersigned gives substantial weight to Dr. Sims' PRFC assessment. Dr. Sims is familiar with Social Security law and regulations, and his PRFC assessment is generally consistent with the record as a whole.

\* \* \*

**11. The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2014, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 17, 19-20, 21-22, 24).

## V. DISCUSSION

Eligibility for a Period of Disability and DIB requires that the claimant be disabled. 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be

6

severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Knapp alleges that the ALJ in this case reversibly erred by giving substantial weight to the opinion of a non-examining physician concerning his assessment of Knapp's physical residual functional capacity. Knapp also alleges that the ALJ erred because her assessment of his RFC was not supported by substantial evidence. The Court will address each of these claims in turn.

**A. <u>Non-examining Physician's Opinion</u>**

Knapp claims that the ALJ erred in this case by giving substantial weight to the physical residual capacity assessment made by Dr. Sims because he was a non-examining physician who reviewed Knapp's medical records two months after he applied for disability, before many of the medical records submitted to the ALJ had been created, and because he had no history or relationship with Knapp. The relevant social security regulations provide that medical opinions are weighed by considering the following factors: 1) whether the source of the

opinion examined the claimant; 2) whether the source treated the claimant and, if so, a) the length of the treatment relationship and the frequency of examination and b) the nature and extent of the treatment relationship; 3) the supportability of the opinion with relevant evidence and by explanations from the source; 4) the consistency of the opinion with the record as a whole; 5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

Knapp seems to base his argument, in part, on an implied assertion that the ALJ only relied on Dr. Sims's opinion in making his assessment of Knapp's RFC. Knapp's argument in this regard is not accurate. The ALJ reviewed and discussed the findings of Knapp's numerous objective tests, his treatment, and the opinion of Dr. Hall, his treating physician, concerning Knapp's physical abilities, as well as the results of the Functional Capacity Evaluation ("FCE") performed on Knapp at the request of Dr. Hall.[2] (Tr. 20-22). Interestingly, the

---

[2] The Court notes that even if the ALJ had relied totally on the opinion of Dr. Sims, such reliance would not necessarily be in error. *See Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *24 (S.D. Ala. Sept. 30, 2015), *quoted in Pettaway v. Colvin*, CA 15-0640-C, 2017 WL 62649, at *7 (S.D. Ala. Jan. 5, 2017) (holding that "[i]n order to find that the ALJ's RFC assessment is supported

9

conclusions reached by Dr. Sims based upon his review of Knapp's records were in line with the conclusions reached in the FCE. The Eleventh Circuit has recognized that where substantial evidence supports an ALJ's decision to assign great weight to a non-examining physician, even if it is greater weight than is given to a treating doctor, the ALJ may permissibly do so. *See Forsyth v. Comm'r*, 503 F. App'x 892, 893 (11th Cir. 2013); *see also* 20 C.F.R. § 404.1527(c), (e); 56 Fed. Reg. at 36,936-37, 36,953, 36,969; *Willis v. Comm'r of Soc. Sec.,* No. 3:09-CV-297-J-20MCR, 2010 WL 3245449, at *7 (M.D. Ala. Aug. 17, 2010) (affirming ALJ's reliance on non-examining physicians' opinions despite conflict with examining physicians' opinion).

Relying on *Dillard v. Astrue*, 834 F. Supp. 2d 1325 (S.D. Ala. 2011), Knapp also argues that the ALJ's consideration of the opinion of Dr. Sims is contrary to the law of this Circuit and that the Court must "include a residual functional capacity assessment by a treating or examining physician." (Doc. 14 at pp. 8-9). However, more recent cases in this district have held that "[i]n order to find that the ALJ's RFC assessment is supported by substantial evidence, … it is ***not*** necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *24 (S.D. Ala. Sept. 30, 2015), *quoted in Pettaway v. Colvin*, CA 15-0640-C, 2017 WL 62649, at *7 (S.D. Ala. Jan. 5, 2017) (emphasis added). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal

---

by substantial evidence, … it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician").

conclusions reached.'" *Jones,* 2015 WL 5737156, at *23 (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)). Accordingly, *Dillard* is inapposite here.

In this case, the ALJ supported her decision to give Dr. Sims's opinion substantial weight by stating that his assessment was consistent with the record as a whole and noting his familiarity with Social Security laws and regulations. As noted above, the Court also recognizes that Dr. Sims's opinion was consistent with the results of the FCE and Dr. Hall's opinion. Based upon its review of the record, the Court finds that the ALJ's decision to afford substantial weight to Dr. Sim's opinion was based on substantial evidence and was, thus, not in error.

## B. Residual Functional Capacity Assessment

Knapp also alleges that the ALJ erred because her assessment of his RFC was not supported by substantial evidence. As noted above, the ALJ found that Knapp had the RFC to perform light work, "except that he needs to be able to alternate between sitting and standing at will, but will not need to leave the work station, and he is unable to work around heights." (Tr. 19).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do

despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. *Id*. at *3. The ALJ is **exclusively** responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

Knapp generally asserts that the RFC was not supported by substantial evidence because the ALJ did not include all of the restrictions noted in his Functional Capacity Evaluation (FCE) and did not properly take into account the severity of his back and knee problems in formulating his RFC. (Doc. 14 at pp. 4-8). It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is

supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

After reviewing Knapp's testimony concerning his limitations and the medical evidence, the ALJ stated the following in assessing his RFC:

> The FCE on March 22, 2016 demonstrated that the claimant had the tolerance for lifting in the light physical demand level of 20 pounds from the knee to overhead level with frequent intermittent sitting, standing, and walking (Exhibit 17F). The remaining limitations addressed in the FCE are generally consistent with light work activity (SSRs 83-14 and 8S-1S). Some inconsistencies with the claimant's performance were noted during the FCE, and he displayed some fear avoidance and self-limiting behaviors with material handling.
>
> On June 17, 2016, Dr. Hall noted that the claimant had reported complaints of intractable pain but summarized the FCE conclusions and cited the exam as an objective evaluation of the claimant's physical ability; he did not challenge the results in any respect other than to remark that the claimant's condition could be expected to worsen with time (Exhibit 18F).
>
> Residual functional capacity ordinarily is an assessment of the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, for five days a week, or an equivalent work schedule (SSRs 96-8p and 96-9p). Light work involves lifting up to 20 pounds at a time, lifting or carrying objects weighing up to 10 pounds frequently, and may require a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls (20 CFR 404.1567(b)). In consideration of the claimant's impairments, he is unable to perform medium or heavier work. However, the record as a whole shows that he is able to perform light work except that he needs to be able to alternate between sitting and standing at will, but this can be accommodated without leaving the work station; moreover, the claimant is unable to work around heights.
>
> The undersigned has considered the claimant's obesity pursuant to SSR 02-1p. His obesity likely complicates or exacerbates his other impairments and negatively affects his ability to sustain work activity due to fatigue and problems

with body position and movement. Nevertheless, he has reported performing various physical activities, (Hearing Testimony and Exhibit 3E), and various normal physical examination results have been noted despite his obesity (Exhibits 5F, 7F, 9F, 11F, 12F, and 15F). The limitations included in the above residual functional capacity accommodate the claimant's obesity and its effects on his other impairments.

The undersigned cannot find the allegations to be fully consistent with the evidence. The claimant has reported performing various physical activities, (Hearing Testimony and Exhibit 3E), and various normal physical examination results have been noted (Exhibits 5F, 7F, 9F, 11F, 12F, and 15F). Some inconsistencies with his performance were noted during the FCE on March 22, 2016, and he displayed some fear avoidance and self-limiting behaviors with material handling (Exhibit 17F). Although he alleges experiencing the medication side effect of fatigue and not being able to concentrate long enough to watch a movie due to pain and medication side effects, his normal attention and concentration abilities have been noted on examination, he has mostly denied any medication side effects, and he has only complained of drowsiness from morphine on one occasion (Exhibits 5F,10F, 13F, 15F, and 16F).

As for opinion evidence, although Physical Therapist Washicheck and Physical Therapist Assistant Brenes are not acceptable medical sources for medical opinion purposes, the undersigned has considered their FCE under SSR 06-03p and gives it great weight (Exhibit 17F). They administered the FCE, and the FCE conclusions are generally consistent with the record as a whole. Moreover, Dr. Hall cited the FCE conclusions as an objective evaluation of the claimant's physical ability; he did not question or challenge the conclusions in any respect other than to note that the claimant's condition could be expected to worsen with time (Exhibit 18F).

On March 10, 2015, James Sims, M.D., a State agency medical consultant, completed a physical residual functional capacity (PRFC) assessment indicating that the claimant could perform a range of light work (Exhibit l A). The undersigned gives substantial weight to Dr. Sims' PRFC assessment. Dr. Sims is familiar with Social Security law and regulations, and his PRFC assessment is generally consistent with the record as a whole.

(Tr. 21-22).

      A review of the entire record reveals that the ALJ was presented with numerous medical reports and the FCE detailing Knapp's limitations, as well as his own testimony. The ALJ made reference to the medical findings, as well as other evidence, in assigning additional limitations to Knapp's RFC, such as

allowing him to alternate between sitting and standing at will, without leaving the work station, and restricting him from working around heights. (Tr. 19). Much of the argument made by Knapp is simply a plea to have the Court reweigh the evidence, which it simply cannot do. Although the Court recognizes that Knapp has had substantial testing and treatment for his back and certainly sympathizes with his complaints, the Court cannot say that the restriction to light work with the additional limitations is not supported by substantial evidence. Knapp's pain management physician, Dr. Hall, referred him to the physical therapist to have the FCE performed to determine his physical capabilities and limitations. (Tr. 397). After reviewing the results of the FCE, Dr. Hall opined that it suggested Knapp would be able to work at a light physical demand level up to 20 pounds lifting. (Tr. 403).

Knapp also mentioned in passing in his brief that the ALJ should have sought clarification concerning two doctors' varying interpretations of his knee x-rays. However, he has failed to demonstrate how these varying interpretations of the x-rays affect the outcome of his case. The ALJ found that he had a severe impairment of degenerative joint disease, and the FCE took into account his physical limitations as a whole, not just those attributable to his back. An ALJ is not required to seek additional evidence when the evidence in the record is sufficient to support the ALJ's decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); 20 C.F.R. § 404.1520b(c) (2016).

Having reviewed the evidence and considered the arguments made by Knapp and being mindful of the admonishment that the reviewing court may not

reweigh the evidence or substitute its judgment for that of the Commissioner, the Court finds that the RFC assessment made by the ALJ was supported by substantial evidence. The opinion of Dr. Hall, the results of the FCE, and the totality of the medical evidence constitute substantial evidence supporting the ALJ's RFC assessment, as well as her final decision.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Knapp is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **3rd** day of **July, 2018**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**